UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                        )
GREAT SOCIALIST PEOPLE'S                )
LIBYAN ARAB JAMAHIRIYA, et al.,         )
                                        )
        Plaintiffs,                     )
                                        )        Civil Action No. 06-02046 (RBW)
        v.                              )
                                        )
AHMAD MISKI                             )
                                        )
        Defendant.                      )
_____ )
```

**MEMORANDUM OPINION**

The plaintiffs, the Great Socialist People's Libyan Arab Jamahiriya and the Embassy of

the Libyan Arab Jamahiriya (collectively, the "plaintiffs") bring this action against the defendant,

Ahmad Miski, for allegedly infringing upon their trademark rights in violation of the provisions

of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A) and (B) (2000), and the Anti-Cybersquatting

Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d) (2000).  See generally Complaint

("Compl.").  Currently, before the court is defendant Ahmad Miski's Motion to Transfer ("Def.'s

Mot.").[1]  For the reasons set forth below, the Court denies the defendant's motion.

**I. Background**

On November 30, 2006, the plaintiffs initiated this action in order to obtain the control of

and damages from the registration and use of four "domain names" - "embassyoflibya.org,"

---

[1]The following papers have been submitted to the Court in connection with this motion: (1) Defendant's
Memorandum in Support of Motion to Transfer Venue ("Def.'s Mem."); (2) Plaintiff's Memorandum in Opposition
to Motion to Transfer Venue ("Pl.'s Mem."); and (3) Defendant's Reply to Plaintiff's Opposition to Defendant's
Motion to Transfer Venue ("Def.'s Reply").

"libyaembassy.com," "libyaembassy.org," and "libyanembassy.com." Compl. at 1-3 & ¶ 4. The plaintiffs assert that the domain names at issue were registered to the defendant at an Annapolis, Maryland address between December 13, 2002 and March 12, 2003. Compl., Exhibit ("Ex.") 1 (Network Solutions' "WHOIS [internet] Search Results" provide information about registered domain name contained in the Public Internet Registry, which includes the name and address of individuals who registered the domain names ("WHOIS Search Results")).

The plaintiffs contend that the subject "famous marks" - "Embassy of Libya, Libya Embassy and Libyan Embassy" - and the above corresponding "domain names" are its intellectual property and are being illegally used by the defendant to sell power of attorney services in violation of the provisions of the Lanham Act and the ACPA. Compl. ¶¶ 13-14, 22. The domain names allegedly direct internet users to a website operated by the Arab American Chamber of Commerce ("AACC"), a corporation registered in the District of Columbia. See Compl., Ex. 2 (printout of the "Legalization and Certification of Documents from [the] Libya Embassy in Washington DC" website ("legalization website")); Pl.'s Mem., Ex. 2 (printout from the District of Columbia Consumer and Regulatory Affairs website ("regulatory affairs web page")). On the legalization website, the AACC offers to have documents authenticated by the Department of State, certified by the Chamber of Commerce, and legalized by the Libyan embassy in the District of Columbia. Compl., Ex. 2 (legalization website). This website contains a disclaimer, stating that it was created by the AACC, that payment is made to the AACC for the services provided, and it provides a District of Columbia telephone number for visitors to contact. Id. However, the mailing address for payment of the service fee is the same Annapolis address provided by the defendant when the subject domain names were registered. Id., Ex. 1

2

(WHOIS Search Result).

The defendant serves as the executive director of the AACC, Pl.'s Mem., Ex. 3 (printout from the contact page provided on the AACC's website ("AACC contact page")), and he is listed as the registered agent for the AACC in the District of Columbia, id., Ex. 2 (regulatory affairs web page). In October 2006 the defendant purportedly met with the Libyan Ambassador in Washington, D.C. and attempted to negotiate an exclusive contract with the Libyan government to provide the services offered on the four websites at issue, including acting as the Libyan government's agent for the purpose of "authenticating and legalizing documents between U.S. and Libyan individuals and businesses."[2] Pl.'s Mem., Ex. 4 (Affidavit of Ambassador Aujali) ¶¶ 7-9.

On January 8, 2007, the defendant, a resident of Maryland, responded to the complaint by requesting that this Court transfer this action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of Maryland. Def's Mot. at 1. As support for requesting the transfer, the defendant challenged whether the plaintiffs have properly brought this action in the District of Columbia pursuant to 28 U.S.C. § 1391(b).[3] Def.'s Mem. at 3-4. On January 18,

---

[2] The defendant neither confirms nor denies any of these facts, stating only that "none of the alleged ties relate to the internet domain names themselves." Def.'s Reply at 2. However, the defendant does not actually provide the Court with any substantive facts about himself or his alleged activities.

[3] The Court notes that while a motion to transfer may be made at any time after the initiation of an action under section 1404(a), a claim of improper venue should be raised in the answer to the complaint or in a Rule 12 pre-answer motion to dismiss. See Fed. R. Civ. P. 12(b)(3) (2000) (permitting the defense of improper venue to be raised in either a responsive pleading or a Rule 12 motion) (emphasis added); 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3844 (3d ed. 2007) (stating that if venue is proper but inconvenient, a motion for a change of venue pursuant to section 1404(a) may be made at any time, but challenges to venue should be made in the answer or pursuant to Rule 12(b)(3), and motions to transfer for improper venue should be made pursuant to section 1406). While not styled as such by the defendant, the Court will consider the instant motion as a motion to dismiss for improper venue pursuant to Rule 12(b)(3), or in the alternative, one to transfer venue pursuant to 28 U.S.C. § 1404(a).

3

2007, the plaintiffs filed their opposition to the defendant's motion, and on January 26, 2007, the defendant replied, making the issue ripe for resolution.

## II. Standards of Review

*A. Dismissal for Improper Venue*

In considering a motion to dismiss for lack of proper venue under Rule 12(b)(3), "the Court accepts the plaintiff['s] well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff['s] favor, and . . . resolves any factual conflicts in the plaintiff ['s] favor." Quarles v. Gen. Inv. & Dev. Co., 260 F. Supp. 2d 1, 8 (D.D.C. 2003) (internal quotation marks and citation omitted); see also 2215 Fifth St. Assocs. v. U-Haul Intern., Inc., 148 F. Supp. 2d 50, 54 (D.D.C. 2001) (stating that courts will grant a 12(b)(3) motion if "facts [are] presented that . . . defeat [the] plaintiff's assertion of venue") (citation omitted). "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." Freeman v. Fallin, 254 F. Supp. 2d 52, 56 (D.D.C. 2003) (citations omitted).

*B. Transfer of Venue*

The determination of whether an action should be transferred pursuant to 28 U.S.C. §1404(a) "is committed to the sound discretion of the trial court." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A court usually grants a motion to transfer when (1) the moving party first establishes that the action could have been brought in the proposed transferee district, i.e., the District of Maryland, see Lentz v. Eli

4

Lilly, 464 F. Supp. 2d 35, 36 (D.D.C. 2006), and (2) the moving party has "demonstrate[d] that

the balance of convenience of the parties and witnesses and the interest of justice are in their

favor." Id. at 36-37 (citing Consol. Metal Prods., Inc. v. Am. Petroleum Inst., 569 F. Supp. 773,

774 (D.D.C. 1983)).

### III. Analysis

*A. Dismissal for Improper Venue*

The defendant requests dismissal of this case based on his claim of improper venue for

several reasons.  First, the defendant contends that venue is improper in this district under 28

U.S.C. § 1391(b)(1) because a plaintiff may properly bring suit in a judicial district where any

defendant resides. Def.'s Mem. at 3.  And, because he resides in Maryland, the defendant argues

that venue in the District of Columbia is not permissible. Id.  Second, the defendant contends

that venue is improper here under 28 U.S.C. § 1391(b)(2) because a substantial part of the events

or omissions giving rise to the plaintiffs' claim did not occur in the District of Columbia. Id. at

4.  Specifically, the defendant asserts that the plaintiffs "fail to allege how and under what

circumstances misappropriation [of a trademark belonging to the plaintiffs by the defendant]

occurred [in] the District of Columbia." Id.  Moreover, the defendant alleges that the services he

provides are "offered in Maryland and not elsewhere and are not targeted specifically to

Washington, D.C." Id.  As support for this argument, the defendant posits that although all of the

subject domain names direct internet users to his "home page," the home page "merely describes

services offered and provides . . . an Annapolis, Maryland address and not an address within the

District of Columbia" where inquiries for additional information can be directed. Id.

In opposition, the plaintiffs respond that the defendant's transfer motion should be denied

because "a substantial part of the events or omissions giving rise to [their] claim occurred in the

District of Columbia," Pl.'s Mem. at 5.  Specifically, the plaintiffs assert:  (1) that the defendant

met with the Libyan ambassador in Washington, D.C. for the purpose of attempting to establish a

formal relationship with the Libyan embassy so that he could serve as the "exclusive agent of the

Libyan government in authenticating and legalizing documents between U.S. and Libyan

individuals and businesses," Pl.'s Mem., Ex. 4 (Affidavit of Ambassador Aujali) at 2; and (2)

that the services offered by the defendant's website are part of his association with the AACC,[4]

Pl.'s Mem. at 2-3, and his  "practice of coming into the District of Columbia for the purpose of

'authenticating,' 'certifying' and 'legalizing' documents related to foreign governments in the

Middle East," id. at 5, provide an adequate basis for this Court being a proper venue for bringing

this action.

        Venue statutes serve "the purpose of protecting a defendant from the inconvenience of

having to defend an action in a trial court that is either remote from the defendant's residence or

from the place where the acts underlying the controversy occurred."  Modaressi v. Vedadi, 441 F.

Supp. 2d 51, 53 (D.D.C. 2006) (citing VE Holding Corp. v. Johnson Gas Appliance Co., 917

F.2d 1574, 1576 (Fed. Cir. 1990)).  Under section 1391(b)(2), venue is appropriate in "a judicial

district in which a substantial part of the events or omissions giving rise to the claim occurred, or

a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).

However, "[n]othing in section 1391(b)(2) mandates that a plaintiff bring suit in the district

where the most substantial portion of the relevant events occurred, nor does it require a plaintiff

---

[4] The Court also notes that the defendant is the executive director and registered agent for the AACC.  See Pl.'s
Mem., Ex. 2 (regulatory affairs web page) and Ex. 3 (AACC contact page).

to establish that every event that supports an element of a claim occurred in the district where venue is sought." Modaressi, 441 F. Supp. 2d at 57 (emphasis in original).

Because venue is intended to protect defendants, "courts often focus on the relevant activities of the defendant . . . in determining where a substantial part of the underlying events occurred." Abramoff v. Shake Consulting, L.L.C., 288 F. Supp. 2d 1, 4 (D.D.C. 2003). In this Circuit, the measure of the contacts giving rise to where the claim arose is "ascertained by advertence to events having operative significance in the case, and a commonsense appraisal of the implications of those events for accessibility to witnesses." Sharp Elec. Corp. v. Hayman Cash Register Co., 655 F.2d 1228, 1229 (D.C. Cir. 1981) (citing Lamont v. Haig, 590 F.2d 1124, 1134 (D.C. Cir. 1978)). Where the testimony of non-parties and evidence is outside the control of the parties, or may be available at locations where none of the principal events in the suit occurred, the "forum court should not oppose the plaintiff's choice of venue if the activities that transpired in the forum district were not insubstantial in relation to the totality of events giving rise to the plaintiff's grievance and if the forum is generally convenient for all litigants." Id.

Accepting, as it must, all of "the plaintiffs' well-pled factual allegations regarding venue as true," Quarles, 260 F. Supp. 2d at 8 (citation omitted), the Court finds that the Libyan government has adequately demonstrated that venue is proper in the District of Columbia for several reasons, Freeman, 254 F. Supp. 2d at 56-57. First, although the domain names that direct internet users to a website used by the defendant that offers authentication, legalization, and certification services purportedly "operate[s] exclusively in the State of Maryland," Def.'s Mem. at 5, the website is apparently utilized and maintained by a business organization that is both

headquartered and primarily operates in the District of Columbia.[5]  Pl.'s Mem., Ex. 2 (regulatory affairs web page) and 3 (AACC contact page). Second, the defendant is the executive director and registered agent of the AACC.  Id.  Finally, the Libyan government has also submitted an affidavit stating that the defendant had a personal meeting with the Libyan ambassador in the District of Columbia for the purpose of trying to secure an exclusive contract for his business with the Libyan government that would utilize the subject domain names, but was allegedly informed at that meeting "that he did not have the Libyan Government's approval to offer these services or use the Libyan Government's name in any way."  Id., Ex. 4 (Affidavit of Ambassador Aujali) at 2.

While the defendant claims that he "has no necessary connection to Washington, D.C.," Def.'s Mem. at 5, the facts alleged by the Libyan government directly contradict his position.  On the other hand, it appears that the only connection Maryland has with this dispute is the identical Maryland address where the domain names are registered, Compl., Ex. 1 (WHOIS Search Results) and where requests for the services offered by the AACC are to be directed, Pl.'s Mem., Ex. 1 (Legalization and Certification of Documents from Libya Embassy in Washington, D.C. ("legalization website II")).  All of the other alleged facts indicate that the defendant and the events in dispute have significant connections with the District of Columbia.  See Modaressi, 441 F. Supp. 2d at 53, 56 (finding venue appropriate in the District of Columbia where funds acquired from the operation of a restaurant and nightclub in the District of Columbia were distributed and used in Maryland by the custodian of the funds); c.f. Sheraton Operating Corp. v.

---

[5] The Court also notes that the same website lists a contact telephone number with the District of Columbia's area code and has an email address linked to the AACC, which is registered as a corporation in the District of Columbia. Compl., Ex. 2 (legalization website).

Just Corp. Travel, 984 F. Supp. 22, 26 (D.D.C. 1997) (finding venue appropriate in the District of Columbia in a breach of contract action in part because the contract was to be performed in the District of Columbia). Further, although the defendant contends that the services he offers are not targeted to the District of Columbia and are provided only in Maryland, Def.'s Mem. at 4, from a business "operated exclusively in the State of Maryland," id. at 5, as the court in Modaressi found, "[s]imply put, even if a substantial part of the events in this case took place in Maryland, that does not preclude [the] plaintiff from filing suit in the District of Columbia if a substantial part of the events took place here, as well." Modaressi, 441 F. Supp. 2d at 57. What the Modaressi court said equally applies here as well and accordingly the plaintiffs have properly brought this case in the District of Columbia.

*B. Change of Venue*

With venue having been deemed appropriate in the District of Columbia, the Court must now decide whether this action should nevertheless be transferred to the District of Maryland. The defendant requests that this Court transfer this action to the District of Maryland, Baltimore Division, because "[i]t is closest to his home, his family, and business and he has no necessary connection to Washington, D.C." Def.'s Mem. at 5. And, the defendant asserts that the plaintiffs would be less inconvenienced by requiring that they travel to Baltimore to protect an interest important to the Libyan government than he would be inconvenienced by having to travel to the District of Columbia. Id. In response, the Libyan government opposes the transfer because the District of Columbia is "where all of the witnesses expected to testify in this matter live or work and where the evidence to be presented in this case is located." Pl.'s Mem. at 7.

Pursuant to 28 U.S.C. § 1404(a), the Court may transfer this case to any district in which

the plaintiff could have brought the action - in this case the District of Maryland - if the

"convenience of the parties and witnesses" and the"interest of justice" warrant the transfer.  28

U.S.C. § 1404(a); see also Lentz, 464 F. Supp. 2d at 36-37.  As it is not contested that the Libyan

government could have brought suit in the District of Maryland, see Def.'s Mem. at 4; Pl.'s

Mem. at 6, the Court's only inquiry is whether the moving party has demonstrated that the

balance of convenience to the parties and witnesses and the interest of justice merit the transfer.

See Lentz, 464 F. Supp. 2d at 36-37.

In balancing the conveniences of the parties and witnesses and the interest of justice, the

Court must consider both private and public interest factors.  Id. at 37.

> The relevant private interest considerations include, but are not limited to:  (1)
> [the] plaintiffs' privilege of choosing the forum; (2) [the] defendant's preferred
> forum; (3) [the] location where the claim arose; (4) [the] convenience of the
> parties; (5) [the] convenience of the witnesses, but only to the extent that
> witnesses may be unavailable for trial in one of the fora; and (6) ease of access to
> sources of proof.  Public interest considerations include, [but are not limited to]:
> (1) the transferee's familiarity with the governing law; (2) the relative congestion
> of the courts of the transferor and potential transferee; and (3) the local interest in
> deciding local controversies at home.

Id. (citations omitted).  Applying both the private and public interest factors here, the Court finds

that they weigh against transferring this action to the District of Maryland.

"In assessing the convenience to the parties [in the context] of the two potentially proper

venues, the court recognizes that the plaintiff's choice of forum is usually accorded substantial

deference in the venue analysis.  Deference to the plaintiff's choice of forum is particularly

strong where the plaintiff has chosen his home forum."  Reiffin v. Microsoft Corp., 104 F. Supp.

2d 48, 52 (D.D.C. 2000) (citations omitted).  The defendant argues that the "agents of a foreign

government who presumably travel, as a matter of course . . ., can hardly be considered to be

10

'inconvenien[ced]'" by "simply [having] to travel[] a few additional miles . . . ." Def.'s Mem. at

5.  Notwithstanding the defendant's position, the Court fails to see how a factor so insubstantial

as a "few additional miles" merits disregarding the strong presumption of respecting the

plaintiffs' choice of their home forum, Reiffin, 104 F. Supp. 2d at 52, particularly in the light of

the substantial contacts the defendant allegedly has with the District of Columbia. See

Modaressi, 441 F. Supp. 2d at 57 n.7 (noting that in a case where both parties resided in

Maryland, the geographic distance between the District of Columbia and the District of Maryland

"is far too small to present anything more than minor practical difficulties for the parties or their

witnesses" and thus did not defeat the public-private interests that otherwise weighed against the

transfer).  At most, the defendant has demonstrated why, from his perspective, the District of

Maryland is a slightly more convenient forum for himself, which is insufficient to nullify the

plaintiffs' choice of forum. See Sheraton, 984 F. Supp. at 26 (stating that "even if a transfer

would significantly benefit the defendant, the Court will not grant the motion if the result merely

would shift the inconvenience from [the] defendant to [the] plaintiff; the net convenience must

increase") (quoting Kirschner Brothers Oil, Inc. v. Pannill, 697 F. Supp. 804, 807 (D. Del.

1988)).

        As grounds for why this case should remain here, it appears that the District of Columbia

is where the plaintiffs' claim arose.  While the subject domain names are registered at an address

in Maryland, Compl., Ex. 1 (WHOIS Search Results), and the defendant asserts that "the services

offered are offered in Maryland and not elsewhere and are not targeted specifically to

Washington, D.C.," Def.'s Mem. at 4, and the business is "operated exclusively in the State of

Maryland," id. at 5, all of the known facts actually indicate that the defendant is offering his

11

business services in the District of Columbia.  First, as previously noted, the domain names direct

users of the internet to a website that is utilized and maintained by the AACC, a business

organization both headquartered and primarily operated in the District of Columbia. Pl's Mem.,

Ex. 2 (regulatory affairs web page) and 3 (AACC contact web page). Second, the defendant is the

executive director and registered agent of the AACC. Id.  Finally, the defendant approached the

Libyan ambassador in the District of Columbia in an attempt to establish a formal relationship

with the Libyan government whereby defendant Miski would be the exclusive agent of the

Libyan government for the authentication, certification, and legalization services offered on his

website.  Pl.'s Mem., Ex. 4 (Affidavit of Ambassador Aujali) ¶¶ 7-9.  Accordingly, it appears

that the plaintiffs' claim arose in the District of Columbia.

        In addition, while the defendant may have business records or witnesses that are located

in Maryland, he does not explain why the location of those records and witnesses require the

transfer of this action to the District of Maryland.  Def.'s Mem. at 5.  Namely, the defendant has

not attempted to demonstrate that any evidence or witnesses relevant to this case would be

unreasonably difficult to secure for trial in the District of Columbia or are outside of the

subpoena power of this Court.[6]  Accordingly, the convenience of the witnesses and the ease of

access to sources of proof cannot be said to support transferring this action to the District of

Maryland.  In sum, the defendant has failed to show that any of the six private interest

considerations actually weigh in favor of transferring this matter.

---

[6]Google Maps, http://maps.google.com (last visited May 30, 2007), indicates that the distance between Washington, D.C. and Annapolis, M.D. is 32.5 miles and, "a subpoena may be served . . . at any place [located outside of a judicial] district [if it] is within 100 miles of the place of the deposition, hearing, trial, production, or inspection. . . ." Fed. R. Civ. P. 45(b)(2) (2000).

The defendant also fails to show how the public interest factors favor transferring this action to the District of Maryland. Although the Court is confident that its sister court in Maryland is equally adept at resolving trademark disputes, and while the congestion of any court is always a concern, no substantiated argument is made by either party as to how these factors impact the transfer analyses. See Def.'s Mem. at 5; Pl.'s Mem. at 8. In any event, this Court finds that considerations such as the transferee court's familiarity with trademark law and the relative congestion of the respective courts favor neither court and, therefore, has no impact on the other public and private interest factors that support this matter remaining in this judicial district. Furthermore, with the defendant being a resident of Maryland and the plaintiffs being located within the District of Columbia, the judicial districts in both jurisdictions have a local interest in this controversy. Accordingly, in light of the collective public and private interests in this case, the Court finds that the balance of conveniences and the interest of justice are best served by retaining this action in the District of Columbia.

### IV. Conclusion

For the foregoing reasons, the Court concludes that the District of Columbia is an appropriate venue for the litigation of the plaintiffs' claims. In addition, the Court finds that the defendant has failed to demonstrate that the balance of convenience of the parties and witnesses, and the interest of justice favor transferring this action to the District of Maryland. Lentz, 464 F. Supp. 2d at 37. Therefore, the defendant's motion to dismiss, or in the alternative to transfer, is denied.

13

SO ORDERED on this 30th day of July, 2007.[7]

_____

REGGIE B. WALTON

United States District Judge

---

[7]An Order consistent with the Court's ruling accompanies this Memorandum Opinion.