IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| GREAT SOCIALIST PEOPLE'S ) <br> LIBYAN ARAB JAMAHIRIYA, et al. ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> AHMAD MISKI ) <br> ) <br> Defendant. ) | <br><br><br><br><br>Case Number: <u>06-CV-2046 (RBW)</u> |

**PLAINTIFF LIBYAN GOVERNMENT'S RESPONSE TO DEFENDANT AHMAD MISKI'S "SUR-REPLY" REGARDING THE PARTIES' CROSS-MOTIONS TO DISMISS**

Plaintiff Great Socialist People's Libyan Arab Jamahiriya and Plaintiff Embassy of the Libyan Arab Jamahiriya [collectively hereinafter "Plaintiff Libyan Government"], by and through their attorneys, J.P. Szymkowicz, John T. Szymkowicz and the Law Firm of Szymkowicz & Szymkowicz, LLP, herein responds to Defendant Ahmad Miski's "sur-reply" regarding the parties' cross-motions to dismiss:

**Defendant Miski's *ad hominem* Attacks on Plaintiff Libyan Government's Counsel**

Defendant Ahmad Miski's sur-reply regarding the parties' cross-motions to dismiss is riddled with *ad hominem* attacks on Plaintiff Libyan Government's counsel, J.P. Szymkowicz. In this sur-reply, Defendant Miski's counsel, Kamal Nawash, claims that Mr. Szymkowicz made "several misrepresentations" to the Court.

**I.    RULE 7 (m) CERTIFICATION**

1.    Defendant Miski's counsel, Kamal Nawash, states in his Local Rule 7 (m) Certification attached to his client's motion to dismiss that

> I contacted, by telephone, opposing counsel, J.P. Szymkowicz, Esquire, in a good-faith effort to determine whether there is any opposition in the relief sought in Defendant's response to Plaintiffs' motions and

   Defendant's motions to dismiss Plaintiffs' complaint or in the alternative [sic] strike certain attachments from the complaint and, if there is opposition, to narrow the areas of disagreement. Attorney J.P. [sic] responded by obnoxiously stating, 'BRING IT ON.'" [emphasis in original].

2. In footnote 1 on page 4 of Plaintiff Libyan Government's responsive pleading, Mr. Szymkowicz stated

   Attorney Nawash's attempt to make Attorney Szymkowicz appear cavalier in his representation of the Libyan Government neglects to detail the entire conversation. Prior to jokingly telling Attorney Nawash to "Bring it On," Attorney Szymkowicz asked Attorney Nawash upon what authority he had for Defendant Miski's motion to dismiss based on a short period of time during which no activity took place in the case. Attorney Nawash failed to cite **any** such authority, and therefore, Attorney Szymkowicz stated "Well, there's no way my client would consent to such a motion," to which Attorney Nawash replied that he would still be filing the motion. It was at this point that Attorney Szymkowicz stated, in a matter-of-fact manner, "Well, bring it on and we'll see what happens."

3. On page 4 of Defendant Miski's sur-reply, Mr. Nawash stated "The above conversation never occurred."

4. Defendant Miski attached an email to his sur-reply (Exhibit 1, pages 12 and 13) that Mr. Szymkowicz sent to Mr. Nawash a few hours after this call.

5. This email stated (in full):

   Kamal Nawash, Esquire
   The Nawash Law Office
   1050 17th Street, N.W., Suite 1000
   Washington, DC  20036
   (202) 776-7191
   kamal@kamalnawash.com
   localdcattorney@yahoo.com

   Mr. Nawash:

   I am writing to you in response to your phone call today in which you stated that you intend to file a Motion to Dismiss the Libyan Government's claims against Mr. Miski for what you referred to as "abandonment" and what we interpret as "lack of prosecution" pursuant to F. R. Civ. P. 41 (b).

>Please be advised that should you file such a Motion, I will have no choice but to seek sanctions against you and your client pursuant to F. R. Civ. P. 11 since this is clearly a motion that has no basis in fact or law and is intended to harass my client into engaging the settlement negotiations that you suggested today.
>
>Before filing your proposed Motion, I suggest that you review <u>Smith-Bey v. Cripe</u>, 852 F. 2d 592, 594 (D.C. Cir. 1988), which states that "neither the delay in service of process nor the eight months of inactivity warrants dismissal under Rule 41(b) for failure to prosecute." In addition, you should review a case cited in <u>Smith-Bey</u>, <u>Sykes v. U.S.</u>, 290 F.2d 555, 557 (9th Cir. 1961), in which the court held that a six month and twenty-eight day "lack of prosecution" was not sufficient to warrant dismissal under Rule 41(b), stating "the policy of the law is to try cases on their merits." Moreover, in <u>U.S. v. Norden Systems, Inc.</u>, 375 F.3d 248, 251 (2nd Cir. 2004), the court observed that dismissal under Rule 41(b) is "one of the harshest sanctions at a trial court's disposal, since it usually extinguishes the plaintiff's cause of action and denies plaintiff his day in court. As a result, it is reserved for use only in the most extreme circumstances. While we agree with the district court that [the plaintiff's] 17 month delay was inexcusably long, we do not agree that the circumstances were sufficiently egregious or that [the plaintiff's] actions were so contumacious as to warrant dismissal of his entire complaint. Thus, we hold it was an abuse of the district court's discretion to dismiss plaintiff's complaint."
>
>It is my sincere hope that after review of the relevant case law on dismissal for want of prosecution you will come to the realization that your threatened motion has no basis in fact or law, and therefore, you will decide not to file such a frivolous motion.
>
>J.P. SZYMKOWICZ
>SZYMKOWICZ & SZYMKOWICZ, LLP
>1220 19TH ST NW STE 400
>WASHINGTON, DC  20036-2438
>(202) 862-8500 (office)
>(202) 607-5500 (mobile)
>jp@szymkowicz.com

5.  Mr. Szymkowicz's email politely (as opposed to the confrontational and flippant manner in which Mr. Nawash accused Mr. Szymkowicz of behaving during the telephone call) references that the parties did engage in substantive discussions pursuant to Local

Rule 7 (m), specifically, the nature of the proposed motion and the bases (or lack thereof) for such motion:

> I am writing to you in response to your phone call today in which you stated that you intend to file a Motion to Dismiss the Libyan Government's claims against Mr. Miski for what you referred to as "abandonment" and what we interpret as "lack of prosecution" pursuant to F. R. Civ. P. 41 (b).
>
> . . .
>
> Before filing your proposed Motion, I suggest that you review [the following cases that supports Plaintiff Libyan Government's defense that they did not "abandon" the case].
>
> . . .
>
> It is my **sincere hope** [emphasis added] that after review of the relevant case law on dismissal for want of prosecution you will come to the realization that your threatened motion has no basis in fact or law, and therefore, you will decide not to file such a frivolous motion.

6. Moreover, Mr. Szymkowicz's email references that Mr. Nawash suggested that the parties engage in settlement negotiations, something that Plaintiff Libyan Government was not interested in pursuing, absent Defendant Miski's return of the domain names at issue.

7. Mr. Nawash claims that "[t]here is a witness to this conversation." is strange considering that this conversation occurred during a telephone call in which Mr. Nawash never indicated that there was anyone else present on the line or that the call was on "speakerphone."[1]

---

[1] In full candor, J.P. Szymkowicz's father, John T. Szymkowicz, an attorney of record in this case, was in J.P. Szymkowicz's office discussing another case when Mr. Nawash called and was present during the entire time J.P. Szymkowicz was speaking to Mr. Narwash on the telephone. It is important to note that John T. Szymkowicz was neither on the telephone call with Mr. Nawash, nor was the call on speakerphone. John T. Szymkowicz was only able to hear what J.P. Szymkowicz said to Mr. Nawash and not what Mr. Narwash said to J.P. Szymkowicz. John T. Szymkowicz is available, if

8. Mr. Nawash claims that Mr. Szymkowicz's email was "an afterthought." See page 5 of Defendant Miski's sur-reply.

9. A careful reading of Mr. Szymkowicz's email shows that Mr. Szymkowicz was mindful of his obligations under Local Rule 7 (m) to "narrow the areas of disagreement" and sought to do this by stating District of Columbia law related to "lack of prosecution" pursuant to F. R. Civ. P. 41 (b).

**II.  MR. SZYMKOWICZ'S AND MR. NAWASH'S CHRISTMAS HOLIDAY CONVERSATION CONCERNING PLAINTIFF LIBYAN GOVERNMENT'S MOTION TO STRIKE AND/OR FOR DEFAULT JUDGMENT.**

10. In Defendant Miski's sur-reply, Mr. Nawash states (on page 5):

> the above-mentioned misrepresentation is not the first time attorney Szymkowicz ignored Rule 7 (m) and behaved in a bizarre manner. During the Christmas holidays, attorney Szymkowicz contacted attorney Nawash to ask if the Defendant would consent to having his answer struck and if he would also consent to a default judgment. When attorney Nawash attempted to discuss the motion and case with attorney Szymkowicz, attorney Szymkowicz stated that he was not interested in a discussion and hung up the phone while attorney Nawash was still speaking.

11. Mr. Szymkowicz admits that he received a return call from Mr. Nawash in response to his message left on Mr. Nawash's voice mail pursuant to Local Rule 7 (m), but that Mr. Nawash's call came in on Mr. Szymkowicz's mobile phone during a dinner party attended by Mr. Szymkowicz in a very loud restaurant.

12. Mr. Szymkowicz asked Mr. Nawash if he would consent to the relief requested in the proposed motion and Mr. Nawash replied, in no uncertain terms, that he would not.

---

necessary, to confirm the veracity of J.P. Szymkowicz's statement set forth in footnote 1 on page 4 of Plaintiff Libyan Government's responsive pleading.

13. Mr. Szymkowicz does not believe that he "hung up" on Mr. Nawash while he was "still speaking," but if he did, it was inadvertent, with no animosity, and an action, that if it indeed occurred, expresses his sincere apology to Mr. Nawash.

### III. MR. NAWASH'S CLAIM THAT MR. SZYMKOWICZ "MISLED THE COURT BY REPRESENTING THAT DEFENDANT WAS REPRESENTED BY A DISTRICT OF COLUMBIA LAW FIRM."

14. On page 6 of Defendant Miski's sur-reply, Mr. Nawash claims that

> Again on page four of Plaintiff's reply, the Plaintiffs' attempt to mislead this Honorable Court in making the following statement:
>
>> Defendant Miski attempted to justify his late filing was by falsely stating that he did not have a lawyer licensed to practice in the District of Columbia. Of course, this false statement is easily proven by a cursory review of the Court's docket sheet that clearly shows that not only was Defendant Miski represented by a District of Columbia attorney, but was represented by a major District of Columbia firm, Bonner, Kiernan, Trebach & Crociata, LLP.
>
> The above statement is incredibly misleading because Plaintiffs or their counsel know that on January 8, 2007, attorney Suzan Lewis of Bonner, Liernan, [sic] Trebach & Crociata, LLP only filed a motion to have Defendant's attorney appear Pro Hac Vice before this Honorable Court.

15. Mr. Szymkowicz believes that Mr. Nawash's allegation of an "attempt to mislead" is completely and utterly without merit and is not supported in any way by a "cursory review of the Court's docket sheet."

16. Mr. Nawash's statement that "attorney Suzan Lewis of Bonner, Liernan, [sic] Trebach & Crociata, LLP only filed a motion to have Defendant's attorney appear Pro Hac Vice before this Honorable Court" is **false** as Ms. Lewis clearly signed her electronic signature on Defendant Miski's motion to transfer venue filed on January 8, 2007 and on

6

Defendant Miski's reply to Plaintiff Libyan Government's opposition to Defendant Miski's motion to transfer venue filed on January 26, 2007.

17.     Mr. Nawash's statement is further proven false by the fact that Ms. Lewis filed a notice of withdrawal of appearance on December 14, 2007 – the same day Mr. Nawash filed Defendant Miski's untimely answer and counterclaim.

18.     Obviously, Mr. Nawash's allegation that Mr. Szymkowicz "attempted to mislead" the Court by highlighting the fact that Defendant Miski was represented by Ms. Lewis until December 14, 2007 ignores the significant responsibilities that local counsel have when representing a client along with attorneys admitted *pro hac vice*.

19.     In the instant case, there was no reason for Plaintiff Libyan Government or its counsel, Mr. Szymkowicz, to know the relationship between Ms. Lewis, as local counsel, and Mr. Schulte, as counsel admitted *pro hac vice*.

20.     In fact, assuming arguendo that Ms. Lewis owed no duties to Defendant Miski as local counsel, Mr. Schulte, as counsel admitted *pro hac vice*, should have ensured that Defendant Miski filed a timely answer to Plaintiff Libyan Government's complaint after this Honorable Court denied Defendant Miski's motion to transfer venue on July 30, 2007.

**IV.     THE COUNTERCLAIM EXCEPTION TO THE FOREIGN SOVEREIGN IMMUNITIES ACT DOES NOT APPLY IN THE INSTANT CASE SINCE DEFENDANT MISKI'S COUNTERCLAIM DOES NOT "ARISE OUT OF THE TRANSACTION OR OCCURRENCE THAT IS THE SUBJECT MATTER OF THE CLAIM OF THE FOREIGN STATE."**

The counterclaim exception to the Foreign Sovereign Immunities Act does not apply in the instant case since Defendant Miski's counterclaim does not "arise out of the transaction or occurrence that is the subject matter of the claim of the foreign state." 28 U.S.C. § 1607 states:

> In any action brought by a foreign state, or in which a foreign state intervenes, in a court of the United States or of a State, the foreign state shall not be accorded immunity with respect to any counterclaim—
>
> > (a)  for which a foreign state would not be entitled to immunity under section 1605 of this chapter [28 U.S.C. § 1605] had such claim been brought in a separate action against the foreign state; or
> >
> > (b)  arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state; or
> >
> > (c)  to the extent that the counterclaim does not seek relief exceeding in amount or differing in kind from that sought by the foreign state.

Plaintiff Libyan Government's complaint alleges that Defendant Miski misused the domain names, "embassyoflibya.org," "libyaembassy.com," "libyaembassy.org" and "libyanembassy.com." Defendant Miski's counterclaim alleges, in relevant part, that

> Count I – Tortious Interference with Contract
>
> ¶55.  That as a result of the Libyan embassy's refusal to serve the customers of Mr. Miski, Legalization, Inc. and the Arab American Chamber of Commerce, Mr. Miski and Legalization, Inc., suffered great financial harm by losing existing and future customers.
>
> ¶58.  That Ahmad Miski, Legalization, Inc. and the Arab American Chamber of Commerce, had existing contracts with customers and expectancy of contracts with other customers.
>
> ¶59.  That the Embassy of Libya was aware of those contracts.
>
> ¶60.  That the Libyan embassy "intentionally procured the contract's Breach."
>
> ¶61.  That Ahmad Miski suffered damages from the embassy's tortuous interference with contract.
>
> Count II – Tortious Interference with Prospective Economic Advantage
>
> ¶64.  That as a result of the Libyan embassy's refusal to serve the customers of Mr. Miski, Legalization, Inc. and the Arab American Chamber of Commerce, Mr. Miski and Legalization, Inc., suffered great financial harm by losing existing and future contracts/business from

customers and economic advantage.

¶66.    That Ahmad Miski, Legalization, Inc. and the Arab American Chamber of Commerce, had existing contracts, business relationships and expectancy of business relationships.

¶67.    That the Embassy of Libya was aware of the contracts, business relations and expectancy of business relations.

¶68.    That the Libyan embassy intentionally procured the contract's Breach, termination of the business relations and expectancy of business relations.

¶69.    That Ahmad Miski suffered damages from the embassy's tortuous interference with Prospective Economic Advantage.

Count III – Abuse of Process

¶72.    That the Plaintiffs/Counter Defendants, through their ambassador in Washington, DC attempted to secure the ownership of several website addresses, owned by Ahmad Miski, without proper compensation.

¶73.    That when Ahmad Miski refused to accept the embassy's offer to acquire his webs sites [sic] addresses, the Plaintiffs, Embassy of the Libyan Arab Jamahiria and Great Socialist People's Libyan Arab Jamahiria, retaliated by filing this abusive and frivolous lawsuit to accomplish what they could not do through legal means.

¶74.    That the Plaintiffs, Embassy of the Libyan Arab Jamahiria and Great Socialist People's Libyan Arab Jamahiria, are using "process" to collaterally require or compel Mr. Miski to give them certain web site addresses that they cannot "legally and regularly" compel him to give up.

¶75.    That as a result of Plaintiffs' abuse of process, Ahmad Miski suffered financial harm and great emotional distress.

It is clear that counts I and II (Tortious Interference with Contract and Tortious Interference with Prospective Economic Advantage) do not "arise out of the transaction or occurrence that is the subject matter of the claim of the foreign state" since those claims are based on the Libyan embassy's refusal to serve the customers of Mr. Miski, Legalization, Inc. and the Arab American Chamber of Commerce.  Such alleged "refusal

9

to serve" Defendant Miski's alleged customers is not related in any way to Defendant Miski's misuse of Plaintiff Libyan Government's name on the websites. With regard to count III (Abuse of Process), Plaintiff Libyan Government believes that the Foreign Sovereign Immunities Act [28 U.S.C. § 1605 (a) (5) (B)] provides immunity from an abuse of process claim as fully stated in Plaintiff Libyan Government's reply to Defendant Miski's response to Plaintiff Libyan Government's motion for default judgment. If, assuming arguendo, it is not, "abuse of process" is not a proper cause of action in the instant case. In <u>Morowitz v. Marvel</u>, 423 A.2d 196, 198 (D.C. 1980), the court held that a cause of action for abuse of process will lie if "the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do." A critical concern in abuse of process cases is whether "process was used to accomplish an end unintended by law, and whether the suit was instituted to achieve a result not regularly or legally obtainable." <u>Id</u>. "The mere issuance of the process is not actionable, no matter what ulterior motive may have prompted it; the gist of the action lies in the improper use after issuance." <u>Id</u>. Thus, in addition to ulterior motive, one must allege and prove that there has been a "perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge." <u>Id</u>. In addition, the court in <u>Morowitz</u> observed that "Without more, appellants' proffer that appellee filed the counterclaim with the ulterior motive of coercing settlement, is deficient. <u>Id</u>. at 198-99.

Rather, the cause of action that Defendant Miski could possibly allege (although Plaintiff Libyan Government would deny such allegations vigorously) is malicious prosecution, which is defined as "prosecution of a civil suit with an improper motive and

10

without provable cause, [provided that] it causes special injury such as seizure of property and ends unsuccessfully." Chatterton v. Janousek, 280 F.2d 719, 721 (D.C. Cir. 1960). "Abuse of process thus stands in marked contrast to the tort of malicious prosecution." Bown v. Hamilton, 601 A.2d 1074, 1080 (1992). Obviously, in order for Defendant Miski to ever have a cause of action for malicious prosecution, he would have to prevail in Plaintiff Libyan Government's claim that Defendant Miski misused the domain names. Thus, a cause of action for malicious prosecution is not proper as a counterclaim, only as a claim instituted after the conclusion of the case upon which the malicious prosecution is based. Since the case is still ongoing, Defendant Miski does not have a claim for malicious prosecution (and Plaintiff Libyan Government believes that he never will). Moreover, Defendant Miski does not have a claim for abuse of process (irrespective of Plaintiff Libyan Government's immunity) since the instant suit filed by Plaintiff Libyan Government was clearly instituted to achieve a result that is "legally obtainable," specifically the forfeiture and cancellation of the domain names "embassyoflibya.org," "libyaembassy.com," "libyaembassy.org" and "libyanembassy.com" pursuant to 15 U.S.C. § 1125 (d) (1) (C).

**V.   DEFENDANT MISKI'S SUR-REPLY (AS HIS ORIGINAL MOTION TO DISMISS FOR LACK OF PROSECUTION) PRESENTS NO LEGAL AUTHORITY TO SUPPORT HIS CLAIM THAT PLAINTIFF LIBYAN GOVERNMENT'S CASE AGAINST DEFENDANT MISKI SHOULD BE DISMISSED.**

Defendant Miski's sur-reply (as his original motion to dismiss for lack of prosecution) presents no legal authority to support his claim that Plaintiff Libyan Government's case against Defendant Miski should be dismissed.

                                              Respectfully submitted,

/x/_____
J.P. Szymkowicz (#462146)
John T. Szymkowicz (#946079)
SZYMKOWICZ & SZYMKOWICZ, LLP
1220 19th Street, N.W., Suite 400
Washington, DC  20036-2438
(202) 862-8500 (voice)
(202) 862-9825 (fax)

Attorney for Plaintiff Great Socialist People's Libyan Arab Jamahiriya

Case 1:06-cv-02046-LFO   Document 24   Filed 01/17/2008   Page 12 of 12

12