# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
GREAT SOCIALIST PEOPLE'S LIBYAN            )
ARAB JAMAHIRIYA and EMBASSY OF             )
THE LIBYAN ARAB JAMAHIRIYA,                )
                                                    )
            Plaintiffs,                             )
                                                    )   Civil Action No. 06-2046 (RBW)
      v.                                            )
                                                    )
AHMAD MISKI,                                        )
                                                    )
            Defendant.                              )
_____)

## <u>MEMORANDUM OPINION</u>

The plaintiffs, the Great Socialist People's Libyan Arab Jamahiriya (the "Libyan Government") and the Embassy of the Libyan Arab Jamahiriya ("Libyan Embassy"), bring this action against the defendant, Ahmad Miski, for allegedly infringing their trademark rights in violation of two provisions of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A) and (B) (2006), and the AntiCybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d) (2006). <u>See generally</u> Complaint ("Compl."). The defendant has responded by asserting counterclaims for monetary damages, costs, and attorneys' fees arising from the plaintiffs' alleged tortuous interference with the defendant's contracts and prospective business advantage. <u>See</u> Counter Claim [sic] ¶¶ 54-62.[1] The defendant also pleads an abuse of process counterclaim against the plaintiffs based on the plaintiffs' initiation of this lawsuit. <u>Id.</u> ¶¶ 71-75. Currently before the

---

[1]     The defendant has failed to number the pages of any of his submissions filed with the Court throughout the course of this litigation, although in some instances he numbered the paragraphs of the documents. Therefore, throughout this Order, to the extent that the defendant has failed to provide paragraph numbers, the Court will refer to the pages consecutively in the order in which they were filed. The defendant is instructed to number the pages of any future filing submitted to the Court.

Court are seven motions seeking various forms of relief by both the plaintiffs and the defendant. Each of these motions will be addressed in this opinion.

## I.        The Motions Related to Questions of Immunity

The four motions before the Court related to the question of immunity are the following: (1) the plaintiffs' motion to strike the defendant's answer and counterclaims, see generally Plaintiff Libyan Government's Motion to Strike Defendant Miski's Amended Answer, Counterclaim and Jury Demand (Docket #36), or in the Alternative, Motion to Dismiss, and Motion for Default Judgment ("Pls.' Mot. to Strike"); (2) a motion by the Ambassador for the Great Socialist People's Libyan Arab Jamahiriya ("the Ambassador") seeking to quash the defendant's notice to take the Ambassador's deposition, see generally Ambassador Aujali's Motion to Quash Defendant Miski's Notice of Deposition ("Ambassador's Mot. to Quash"); (3) the plaintiffs' motion to discharge Magistrate Judge Robinson's imposition of sanctions against them, see generally Plaintiff Libyan Government's Objection to Magistrate Judge's Order Regarding Sanctions ("Pls.' Mot. re Sanctions"); and (4) the defendant's motion to dismiss the plaintiffs' complaint, see generally Defendant's Opposition to Plaintiffs' Objection to Magistrate Judge's Order Regarding "Sanctions" and Defendant's Motion to Dismiss Plaintiffs' Case ("Def.'s Mot. to Dismiss").  While each of these motions seeks various forms of relief and sets forth various legal theories in support of the relief sought, they all turn on two issues concerning immunity: (1) whether the Libyan government has waived its sovereign immunity with respect to the defendant's counterclaims, see Pls.' Mot. to Strike at 4, and (2) whether the Ambassador of the Libyan government has waived his diplomatic immunity in this matter by filing with the Court an affidavit in response to the defendant's motion to transfer venue, see Ambassador's Mot.

2

to Quash at 2; Pls.' Mot. re Sanctions at 6; Def.'s Mot. to Dismiss at 12; see also Plaintiff Libyan

Government's Response to Defendant Ahmad Miski's Motion to Transfer Venue, Ex. 4

(Affidavit of Ambassador Aujali in Support of the Libyan Government's Response to Defendant

Ahmad Miski's Motion to Transfer Venue ("Ambassador Aujali Aff.")).  For the reasons set

forth below, the Court finds: (1) that the plaintiffs have waived their sovereign immunity by

initiating this lawsuit against the defendant, and therefore must answer to the defendant's

counterclaims arising from the same transaction or occurrence as the subject matter of the

allegations set forth in their complaint, but need not answer the defendant's separate abuse of

process counterclaim; and (2) that the Ambassador did not waived his diplomatic immunity by

submitting an affidavit in connection with the defendant's motion to transfer venue, and

therefore, he cannot be unwillingly deposed in this matter.  Accordingly, for the reasons set forth

below, the Court must grant in part and deny in part the plaintiffs' motion to strike the

defendant's answer and counterclaims, grant the Ambassador's motion to quash a notice to take

his deposition, deny the plaintiffs' motion seeking to discharge an imposition of sanctions

against them, and deny the defendant's motion to dismiss the plaintiffs' complaint.[2]

---

[2]     The Court also considered the following documents in resolving these motions: Defendant's Response to Ambassador Aujali's Motion to Quash Defendant's Notice of Deposition and Defendant's Motion to Dismiss Plaintiffs' Case; Defendant's Response to Plaintiffs' Motion to Strike Defendant Miski's Amended Answer, Counterclaim and Jury Trial and Plaintiffs' Alternative Motion to Dismiss and Default Judgment; Defendant's Opposition to Plaintiffs' Objection to Magistrate Judge's Order Regarding "Sanctions" and Defendant's Motion to Dismiss Plaintiffs' Case; Libyan Government's Opposition to Defendant Miski's Opposition [#54/57] to the Libyan Government's Objection to the Magistrate Judge's Order Regarding Sanctions [#53] and Defendant Miski's Motion to Dismiss Plaintiff's Case [#54/57]; Ambassador Aujali's and the Libyan Government's Reply to Defendant Miski's Opposition (Docket #37) to Ambassador Aujali's and the Libyan Government's Motion to Quash Defendant Miski's Notice of Deposition; and Plaintiff Libyan Government's Reply to Defendant Miski's Opposition (Docket #43) to Plaintiff Libyan Government's Motion to Strike Defendant Miski's Amended Answer, Counterclaim and Jury Trial and Plaintiff Libyan Government's Alternative Motion to Dismiss (Docket #41).

**A.      The Plaintiffs' Sovereign Immunity**

The plaintiffs seek to strike the defendant's amended answer and counterclaims, or in the alternative, request that judgment be entered in their favor on the defendant's counterclaims on two grounds: first, that the defendant's amended answer was untimely filed without leave of the Court, Pls.' Mot. to Strike at 3, and second, that sovereign immunity precludes the defendant from maintaining his counterclaims, id. at 4-5.

The first issue is easily resolved.  The plaintiffs argue that the defendant's amended answer and counterclaims were filed without first seeking leave of Court in compliance with Federal Rules of Civil Procedure 12 and 15, given that over a year had lapsed since the defendant's first answer was filed, and the defendant sought neither the consent of the plaintiffs nor leave of the Court before the amended answer and counterclaims were filed.  Id. at 3-4; see also Plaintiff Libyan Government's Reply to Defendant Miski's Opposition (Docket #43) to Plaintiff Libyan Government's Motion to Strike Defendant Miski's Amended Answer, Counterclaim and Jury Trial and Plaintiff Libyan Government's Alternative Motion to Dismiss (Docket #41) at 4.  It is the defendant's position, however, that the parties had an agreement, as set forth in their joint status report filed with the Court on January 15, 2009, that the "pleadings [could] be amended at any time until 30 days after the completion of discovery," which gave him until July 30, 2009, to file any amended pleadings.  Defendant's Response to Plaintiffs' Motion to Strike Defendant Miski's Amended Answer, Counterclaim and Jury Trial and Plaintiffs' Alternative Motion to Dismiss and Default Judgment at 6.

Regardless whether the parties had an agreement prior to the initial scheduling conference, the Court's issuance of its February 3, 2009 Scheduling Order, issued following that

conference, designated the deadlines for the parties to follow.  The Scheduling Order did not

incorporate the agreement relied upon by the defendant, and the parties cannot agree to filing

deadlines inapposite to a court order.  Moreover, considering that under the agreement any post-

discovery amendment of a party's pleadings would theoretically foreclose the other party from

obtaining discovery on newly asserted allegations or claims, the agreement would wreak havoc

on the Court's ability to control its calendar and advance this action to final resolution, as the

Court is confident that the agreement would inevitably result in the Court having to entertain

requests to reopen discovery to avoid a potential unfair resolution of this litigation.  Therefore,

the Federal Rules of Civil Procedure and this Court's Scheduling Order must govern the parties'

actions in this dispute, including the applicable filing deadlines.

Rule 15 states that after the time during which a party may amend a pleading "as a matter

of course" has passed, "a party may amend its pleading only with the opposing party's written

consent or the court's leave." Fed. R. Civ. P. 15(a) (emphasis added).  Here, the defendant

answered the plaintiffs' complaint on December 14, 2007, and he was not entitled to amend his

answer without complying with Rule 15 by acquiring either the consent of the plaintiffs or leave

of the Court.[3]  Accordingly, as the plaintiffs correctly contend, the defendant's First Amended

---

[3]     Even if the parties had entered into an agreement prior to the initial scheduling conference, the agreement
would not render the amendment proper under the theory that the parties' joint statement amounted to written
consent by the plaintiffs' for purposes of Rule 15, because the Court's issuance of its February 3, 2009 Scheduling
Order superseded any agreement by the parties, the Scheduling Order did not incorporate the parties' joint statement,
and the parties cannot agree to filing deadlines inapposite of a court order.  Nor is there any indication in the record
that the defendant specifically sought the plaintiffs' consent to this particular amendment.  See generally First
Amended Answer and Counterclaim; see also Pls.' Mot. to Strike at 4.  Moreover, Rule 15's mandate requiring "the
opposing party's written consent" is not satisfied by a general waiver by the opposing party or the opposing party's
failure to oppose an amendment, see, e.g., Wildauer v. Frederick County, 993 F.2d 369, 372 (4th Cir. 1993) (finding
the trial court's denial of leave to amend the complaint not an abuse of discretion because "[a]lthough appellees did
not oppose plaintiff's motion [to amend the complaint], they did not give the written consent required by [Rule
15(a)]"), given Rule 15(a)'s objective of avoiding "undue delay" and "undue prejudice to the opposing party,"
Foman v. Davis, 371 U.S. 178, 182 (1962); cf. Doe v. McMillan, 566 F.2d 713, 720 (D.C. Cir. 1977) ("When a
plaintiff seeks to file an amended complaint this tardily, it is within the sound discretion of the district court, in

(continued . . . )

Answer and Counterclaim must be stricken, with the result being that the defendant's original

answer and counterclaims are the operative pleadings on behalf of the defendant properly before

the Court.[4]

---

(. . . continued)

consideration of the potential prejudice to the other party and the interest in eventual resolution of litigation, to deny leave to amend."). And these objectives are clearly not advanced when parties consent to the filing of an amendment before they even know what the landscape will be when an amendment is filed.

[4]     The defendant appears to seek, for the first time in his opposition filing, leave to amend his answer and counterclaims pursuant to Rule 15. Defendant's Response to Plaintiffs' Motion to Strike Defendant Miski's Amended Answer, Counterclaim and Jury Trial and Plaintiffs' Alternative Motion to Dismiss and Default Judgment at 7. However, the defendant has not properly moved for the relief he seeks by filing a separate motion, but even if he were to properly seek such relief, the Court would find it imprudent to grant the motion. The defendant asserts that "absolutely no prejudice to the plaintiffs [would result] by granting [the] [d]efendant leave to amend . . . . [because] [n]othing has happened in the case." Id. He is incorrect. Despite the fact that the defendant filed his opposition prior to the termination of discovery, the parties had begun mediation at the time of the defendant's filing. Id. Now, however, this case has advanced to the point where discovery has closed and the parties have also already engaged in extensive settlement negotiations. Granting the defendant leave to amend at this time would likely force the Court to reopen discovery, which would further delay the resolution of this case. The time for the defendant to have timely amended his answer and counterclaim under these circumstances having long passed, the Court cannot permit the defendant to amend his pleadings at this time.

    Even had the Court considered the request to amend while discovery was still ongoing, granting it would have been futile. The defendant's proposed amended answer and counterclaims are identical to his previously filed answer and counterclaims in all but one respect: in his amended counterclaim, the defendant seeks to add factual allegations to support a breach of contract claim based on an oral contract the defendant and the Ambassador purportedly entered into "whereby [the defendant] grant[ed] use of one of [his company's] domain names to the [Libyan E]mbassy and the [Libyan E]mbassy [agreed to use[] [the defendant's company's] services exclusively." See First Amended Counter Claim ¶¶ 51, 76-83. The defendant alleges that he was injured when "the Libyan [E]mbassy[] refus[ed] to serve [his and his company's] customers" after he "took steps to transfer one of [his company's] domain names to the [E]mbassy." Id. ¶¶ 51, 79. The defendant does not allege, however, that he ever transferred the domain names to the Libyan Embassy, because before he could, the plaintiffs commenced this action. Id. ¶ 51.

    Under District of Columbia law, the essential elements of a contract, whether expressed or implied-in-fact, are the following: "competent parties, lawful subject matter, legal consideration, mutuality of assent and mutuality of obligation." Henke v. U.S. Dep't of Commerce, 83 F.3d 1445, 1450 (D.C.Cir.1996); see also Donovan v. U.S. Postal Serv., 530 F. Supp. 872, 890 (D.D.C. 1981) ("[T]he elements of an express and an implied contract are the same."); Jordan Keys & Jessamy, LLP v. St. Paul Fire and Marine Ins. Co., 870 A.2d 58, 62 (D.C. 2005) ("An implied-in-fact contract is a true contract, containing all necessary elements of a binding agreement; it differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt." (quoting Vereen v. Clayborne, 623 A.2d 1190, 1193 (D.C.1993))). Given that the defendant does not allege in his proposed amended counterclaim that either he transferred a domain name to the plaintiffs or that the plaintiffs accepted or used the defendant's domain name, even reading the allegations in the defendant's proposed amended answer and counterclaims in the light most favorable to the defendant, the claim lacks any allegation from which the Court could find legal consideration or mutuality of assent and obligation. Thus, the proposed amended counterclaim does not allege an actionable claim for breach of an oral or an implied-in-fact contract. Accordingly, granting the amendment would be futile because it would not survive a motion to dismiss. Foman, 371 U.S. at 182; James Madison Ltd. by Hecht v. Ludwig, 82 F.3d

(continued . . . )

However, striking the defendant's amended answer and counterclaims does not resolve the second issue raised by the plaintiffs: whether they have sovereign immunity against the defendant's counterclaims for abuse of process and tortious interference.  The plaintiffs argue that they are protected from suit by sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605 (2006), which provides that a foreign state is "immune from the jurisdiction of courts of the United States" unless at least one of several exceptions applies, id. §1604 Those statutory exceptions relevant to this litigation include, in pertinent part, circumstances where "the foreign state has waived its immunity either explicitly or by implication," id. § 1605(a)(1), or where "money damages are sought against a foreign state for . . . damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment," id. § 1605(a)(5).  The defendant's counterclaims for monetary damages arise from the plaintiffs' alleged tortuous interference with the defendant's contracts and prospective business advantage, Counter Claim [sic] ¶¶ 54-62, and this alleged conduct clearly falls within this later exception.  However, this exception does not apply to "any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," id. § 1605(a)(5)(B) (emphasis added), which, without question, encompasses the defendant's claims.  The plaintiffs rely entirely upon this limitation, arguing that because the defendant's counterclaims are the type of claims specifically identified in § 1605(a)(5)(B) and the "Libyan Government has not waived its immunity from suit, . . . the counterclaim[s] must be dismissed."  Pls.' Mot. to Strike at 5.  Were this exception

---

(. . . continued)
1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss.").

and its limitation the only provisions governing this dispute, the plaintiffs' position would be correct, as neither the defendant's abuse of process claim nor his tortious interference counterclaims fall within the sovereign immunity exceptions.  However, the plaintiffs ignore one of the other exceptions to sovereign immunity under § 1605: waiver pursuant to § 1605(a)(1).

Section 1607 of Title 28 of the United States Code provides, in pertinent part, that when a foreign state brings an action in a Court of the United States, it is not immune from a counterclaim "arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state[, id. § 1607(b),] or . . . to the extent that the counterclaim does not seek relief exceeding in amount or differing in kind from that sought by the foreign state[,]" id. § 1607(c). See also Wacker v. Bisson, 348 F.2d 602, 610 (5th Cir. 1965) ("[A] voluntary appearance by a foreign government waives immunity as to any essentially defensive measures taken by the private citizen.").  Essentially, where "[a] sovereign has freely come as a suitor into [United States] courts," the principle of "fair dealing . . . allows a setoff or counterclaim based on the same subject matter" as the allegations upon which the sovereign is seeking relief.  Nat'l City Bank of New York v. Republic of China, 348 U.S. 356, 364-65 (1955).

In a previous memorandum opinion issued in this case by another member of this Court, the Court discussed the plaintiffs' previous motion to strike the defendant's counterclaims and set forth the governing law on immunity, see Dec. 9, 2008 Order & Memorandum at 6-7 (Oberdorfer, J.), noting that parties claiming immunity, as the plaintiffs do here, also carry the burden of establishing by a preponderance of the evidence that they are entitled to sovereign immunity, id. at 6 (citing Agudas Chasidei Chadbad of U.S. v. Russian Fed'n, 528 F.3d 934, 940 (D.C. Cir. 2008)).  In that earlier opinion, Judge Oberdorfer concluded that the plaintiffs did not

meet their burden of establishing that they were entitled to immunity because "it appear[ed] that both [counter]claims [asserted by the defendant] ar[o]se out of the [d]efendant's use of the [specified] domain names [that provided the basis for the plaintiffs' claims]."   Dec. 9, 2008 Order & Memorandum at 8.

Nothing about the nature of the plaintiffs' claims or the defendant's counterclaims has changed since Judge Oberdorfer weighed in on the issue.  The defendant asserts in his counterclaims allegations regarding his online-based document-services business, his interactions with the plaintiffs, and his discussions with the Ambassador.  See Counter Claim [sic] ¶¶ 51-52, 55-56, 64-68.  These are essentially the same type of allegations relied upon by the plaintiffs, see generally Compl.; see also Plaintiff Libyan Government's Response to Defendant Ahmad Miski's Motion to Transfer Venue, Ex. 4 (Ambassador Aujali Aff.), but from a view unfavorable to them.  In their renewed motion to strike, the plaintiffs simply have not addressed the Court's concern by submitting any additional evidence or legal authority establishing that the defendant's counterclaims are unrelated to the claims being pursued in their complaint.  As noted earlier, the plaintiffs' entire sovereign immunity argument relies on the exceptions recognized in 28 U.S.C. § 1605, but completely ignores the counterclaim waiver provision of § 1607, as well as the fact that the claims asserted in the plaintiffs' complaint and the defendant's tortious interference with contract and prospective economic advantage counterclaims arise out of the defendant's use of the domain names identified in the plaintiffs' complaint.  Merely because the plaintiffs refer in their complaint to the specified domain names, while the defendant instead refers to the name of his business which operates at those domain names, does not distract from the fact that at the heart of both sides' positions is the question of

whether the defendant and his business have used the domain names at issue in a legally permissible manner.

The same is not the case as to the defendant's counterclaim for abuse of process.  Unlike the defendant's other two counterclaims, his counterclaim for abuse of process does not arise out of the transaction or occurrence that is the subject matter of the plaintiffs' complaint.  Instead, the defendant's abuse of process counterclaim seeks relief stemming from the plaintiffs' initiation of this lawsuit itself, not his use of the specified domain names.  While the sometimes acrimonious litigation process can result in the filing of additional tangentially related claims in a case, where, as here, the plaintiffs are foreign sovereigns, the principle of sovereign immunity stands as a bar to such claims.  The plaintiffs cannot be said to have waived their sovereign immunity for all counterclaims filed against them by the defendant, just counterclaims arising from the transactions and occurrences specified in their complaint.  Moreover, it is not clear that an abuse of process claim could even lie based on the allegations asserted by the defendant, which are that the plaintiffs initiated this case without proper motive, Counter Claim ¶ 73.  See Hall v. Hollywood Credit Clothing Co., 147 A.2d 866, 868 (D.C. 1959) ("The complaint alleges that [the opposing party] knowingly brought suit on an unfounded claim, which by itself is not an abuse of process.").  Therefore, while the plaintiffs are not entitled to the protections of sovereign immunity as to the counterclaims arising out of the same transaction or occurrence as the plaintiffs' claims, they are entitled to employ sovereign immunity as a shield against the defendant's abuse of process counterclaim.

The final argument asserted by the plaintiffs in their motion to strike is that the defendant is not entitled to a jury trial because jury trials are precluded in cases against foreign sovereigns.

Pls.' Mot. to Strike at 5.  The defendant counters that he is entitled to a jury trial under the Seventh Amendment to the United States Constitution because the plaintiffs have initiated this action against him.  Defendant's Response to Plaintiffs' Motion to Strike Defendant Miski's Amended Answer, Counterclaim and Jury Trial and Plaintiffs' Alternative Motion to Dismiss and Default Judgment at 8-9.

The plaintiffs' argument is essentially rendered moot by the Court's finding that the defendant's attempt to amend his answer and counterclaims was fatally untimely, having been submitted almost twenty-eight months after the initiation of this litigation.  And it was only in the defendant's proposed amended filing when he first sought to invoke his right to a jury trial, more than two years after his written demand was due.  The Federal Rules of Civil Procedure require a party demanding a jury trial to "serv[e] the other parties with a written demand – which may be included in a pleading – no later than 10 days after the last pleading directed to the issue is served."[5]  Fed. R. Civ. P. 38(b).  In other words, the 10 day period begins when "an issue is raised for the first time" in a pleading.  In re Zweibon, 565 F.2d 742, 748 (D.C. Cir. 1977).  "A party waives a jury trial unless its demand is properly served and filed," Fed. R. Civ. P. 38(d), and an amended pleading "does not revive any jury trial right already waived," Bricks, Blocks & Concrete Co., v. Frontier Ins. Co., 39 Fed. Appx. 610, 611 (D.C. Cir. 2002) (citing 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2320 (ed. unspecified); Rosen v. Dick, 639 F.2d 82, 94-96 (2d Cir.1980); Las Vegas Sun, Inc. v. Summa Corp., 610 F.2d 614,

---

[5]     As of December 1, 2009, Federal Rule of Civil Procedure 38 provides that a party has 14 days to demand a trial by jury.  The former rule, which provided for a 10-day timeframe, is the rule that was applicable when the pleading was filed.

620 (9th Cir.1979); Lanza v. Drexel & Co., 479 F.2d 1277, 1310 (2d Cir.1973)).  Accordingly,

the defendant has waived any right he had to demand a jury trial.[6]

**B.      The Libyan Ambassador's Diplomatic Immunity**

Also currently before the Court are three motions that raise the issue of whether the

Libyan Ambassador has diplomatic immunity and cannot be compelled to submit to a deposition

in this action.   The three motions are: first, the Ambassador's motion to quash the defendant's

notice of his deposition, Ambassador's Mot. to Quash at 2; second, the plaintiffs' motion to

discharge the sanctions imposed upon them by the Magistrate Judge arising from the

Ambassador's failure to appear at a settlement conference, Pls.' Mot. re Sanctions at 6; and third,

the defendant's motion to dismiss this case should the Ambassador refuse to submit to the

---

[6]       Even if the defendant had timely filed his request for a trial by jury, or even if his breach of contract counterclaim could be considered a new issue raised for the first time in his amended counterclaim, he would not be entitled to a jury trial on his counterclaims due to the plaintiffs' entitlement under the FSIA to nonjury fact-finding "as to all fact issues that underlie liabilities of the foreign sovereign that arise as a matter of law."  Matthews v. CTI Container Transp. Int'l. Inc., 871 F.2d 270, 279 (2d Cir. 1989); see also 28 U.S.C. § 1330(a) (2006); Arango v. Guzman Travel Advisors, 761 F.2d 1527, 1532 (11th Cir. 1985) (finding that "[b]y their express terms, 28 U.S.C. §§ 1330 and 1441(d) prohibit a case brought against a foreign state, as defined in section 1603, from being tried before a jury. . . . [and] efforts to circumvent this prohibition against jury trials" have been rejected in other circuits); Houston v. Murmansk Shipping Co., 667 F.2d 1151, 1154 (4th Cir. 1981) ("If a complaint contains a request for a jury trial and the court determines, either from the complaint or after investigation, that the defendant is a "foreign state" as defined in [§] 1603, the complaint should not be dismissed for lack of jurisdiction.  The sensible practice is simply to strike the jury demand." (citation omitted)); Ruggiero v. Compania Peruana de Vapores "Inca Capac Yupanqui", 639 F.2d 872, 875 (2d Cir. 1981) ("[T]here are sufficient reasons why newly authorized suits against foreign sovereigns, authoritatively determined to have been unknown to the common law in 1791, are sui generis and should not be deemed to be within the scope of the Seventh Amendment's preservation of jury trial."); Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil, 212 F. Supp. 2d 30, 40 (D.D.C. 2002) ("claims under the FSIA are not eligible for resolution by a jury").  As to whether the plaintiffs could be said to have waived their privilege against having their claims resolved by a jury as a result of having waived their sovereign immunity by initiating this action against the defendant, the answer must be no for several reasons.  First, because the issues that underlie the complaint and the counterclaims arise out of the same facts, to hold otherwise would impermissibly circumvent FSIA, and second, because waiver of sovereign immunity does not somehow remove the plaintiffs from the protections of the FSIA.  See, e.g., Bailey v. Grand Trunk Lines New England, 805 F.2d 1097, 1101 (2d Cir. 1986) ("Although [the Canadian National Railway] has waived its immunity from suit in the United States by [virtue] of its commercial activities, see 28 U.S.C. § 1605(a)(2), it remains amenable to suit in our courts only to the extent permitted by, and in accordance with the express terms of, the FSIA.").

deposition, Def.'s Mot. to Dismiss at 12.  A brief review of the law of diplomatic immunity is necessary as a prelude to addressing these motions.

Diplomatic immunity flows from foreign state sovereign immunity, and consequently the underlying principles supporting the doctrines mirror each other.  Abdulaziz v. Metro. Dade Cty, 741 F.2d 1328, 1330 (11th Cir. 1984) ("The courts have recognized that diplomatic immunity serves the needs of the foreign sovereign and that the diplomat's privilege is 'merely incidental to the benefit conferred on the government he represents.'" (citation omitted)).  With limited exceptions, diplomatic immunity shields foreign persons with diplomatic status from being sued in the courts of this country as prescribed by the Vienna Convention on Diplomatic Relations. 22 U.S.C. § 254d (2006) ("Any action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations, under section 254b or 254c of [title 22 of the United States Code], or under any other laws extending diplomatic privileges and immunities, shall be dismissed.").  And diplomatic immunity, like sovereign immunity, can be waived.  For example, courts are willing to find waiver where a diplomat makes an untimely assertion of immunity, Wacker v. Bisson, 348 F.2d 602, 609 (5th Cir. 1965), "continu[es] to assert a claim while at the same time seeking immunity from a counterclaim," Abdulaziz, 741 F.2d at 1331 (citing Nat'l City Bank, 348 U.S. 356 (1955)), or attempts to shield himself behind a corporate veil while commencing an action through the corporation although the corporation has no meaningful "independent existence" from the diplomat, Lasidi, S.A. v. Financiera Avenida, S.A., 538 N.E.2d 332, 334 (N.Y. 1989). Clearly, all of these waiver exceptions stem from the principle of fairness, as a diplomat, like a foreign sovereign, cannot use the United States courts as both a sword and shield simultaneously.

Here, the situation is not easily resolved because it does not involve a party's claim of immunity.  Rather, the Ambassador, from whom the defendant seeks deposition testimony, is not a party to this action at all.  Indeed, the plaintiffs that have commenced this action are two legal entities, a foreign country and its embassy.  Therefore, the Ambassador cannot be said to have waived his immunity by commencing this action.  And, while the Ambassador is in charge of the embassy and a representative of his country, similar to a lawsuit where a corporation is a party, McKesson Corp. v. Islamic Republic of Iran, 185 F.R.D. 70, 79-80 (D.D.C. 1999) (finding that a foreign sovereign is subject to Federal Rule of Civil Procedure 30(b)(6) just as any other entity to whom a deposition notice is served), the head of the corporation, like the Ambassador here, may or may not be an appropriate representative or witness for the entity for the purposes a particular litigation, see Cmty. Fed. Sav. and Loan Ass'n v. Fed. Home Loan Bank Bd., 96 F.R.D. 619, 621 (D.D.C. 1983) ("In the absence of such extraordinary circumstances, however, an agency official—even if nominally a party—is generally not to be required to submit to an oral discovery deposition in connection with civil litigation when the agency itself has or is willing to respond institutionally to discovery initiatives by producing the administrative record or other documents, answering interrogatories, or by designating a single representative to speak for the agency on deposition in accordance with Fed. R. Civ. P. 30(b)(6).").  However, the fact that the Ambassador is not a party to this litigation, but merely a potential representative of the two sovereign plaintiffs, does not preclude the Court from finding that either the foreign sovereign or the Ambassador himself has waived his diplomatic immunity, either expressly or implicitly, by actively participating in this litigation.  See Doe v. United States, 860 F.2d 40, 45 (2d Cir. 1988) (finding that the foreign sovereign expressly waived the diplomats' immunity); cf. Aquamar,

<u>S.A. v. Del Monte Fresh Produce N.A., Inc.</u>, 179 F.3d 1279, 1291 & n.24, 1292-93, 1297 (11th Cir. 1999) (observing that the Republic of Ecuador was acting through its Ambassador and finding that the Ambassador waived his country's sovereign immunity expressly through the content of his sworn affidavit). Yet, "[t]he courts [are] loath" to find an "implied waiver" by a diplomat absent an "'unmistakable'" or "'unambiguous'" waiver. <u>Aquamar</u>, 179 F.3d at 1291 n.24 (quoting <u>Shapiro v. Republic of Bolivia</u>, 930 F.2d 1013, 1017 (2d Cir. 1991) (collecting cases)).

It is the defendant's position that the submission of the Ambassador's affidavit, which was attached to the plaintiffs' opposition to the defendant's motion to transfer venue at the start of this litigation, <u>see</u> Plaintiff Libyan Government's Response to Defendant Ahmad Miski's Motion to Transfer Venue, Ex. 4 (Ambassador Aujali Aff.), constitutes a waiver of the Ambassador's immunity because it amounts to the Ambassador's appearance and voluntary participation in this action, Def.'s Mot. to Dismiss at 8. The defendant further contends that the Ambassador's representations in his affidavit are "untruthful," and given the Ambassador's voluntary participation as a witness, fairness dictates that the defendant must be afforded the opportunity to depose the Ambassador to establish the untruthfulness of his affidavit. <u>Id.</u>; <u>see also</u> Defendant's Response to Ambassador Aujali's Motion to Quash Defendant's Notice of Deposition and Defendant's Motion to Dismiss Plaintiffs' Case at 4. On the contrary, it is the plaintiffs' and the Ambassador's position that the Ambassador's affidavit did not waive his immunity because he has personal immunity that cannot be waived at any stage of these proceedings. Ambassador Aujali's and the Libyan Government's Reply to Defendant Miski's Opposition (Docket #37) to Ambassador Aujali's and the Libyan Government's Motion to Quash Defendant Miski's Notice of Deposition (Docket #35) at 3; Pls.' Mot. re Sanctions at 12; Libyan Government's Opposition

to Defendant Miski's Opposition [#54/57] to the Libyan Government's Objection to the

Magistrate Judge's Order Regarding Sanctions [#53] and Defendant Miski's Motion to Dismiss

Plaintiff's Case [#54/57] at 5.

While the Ambassador's position that he possesses impenetrable personal immunity is not

correct, it is clear, as the Ambassador states in his motion, that he never made "'a conscious

decision to take part in th[is] litigation.'"  Foremost-McKesson, Inc. v. Islamic Republic of Iran,

905 F.2d 438, 444 (D.C. Cir. 1990) (quoting Frolova v. Union of Soviet Socialist Republics, 761

F.2d 370, 378 (7th Cir. 1985)).  Indeed, his affidavit spoke to the defendant's contacts with the

District of Columbia, Plaintiff Libyan Government's Response to Defendant Ahmad Miski's

Motion to Transfer Venue, Ex. 4 (Ambassador Aujali Aff.) ¶¶ 7-9, contacts the defendant

himself acknowledges in his answer and counterclaims, Counter Claim ¶ 51, and in determining

that venue in the District of Columbia is proper, the Court considered the affidavit only to that

extent, and not as to whether any agreements between the parties were ever reached, let alone

breached, based upon that contact, Memorandum Opinion 3, 6, 8, 12.  Accordingly, the Court

cannot find that the Ambassador has waived his diplomatic immunity in this action.  And, to the

extent that the Ambassador made representations about the substance of his conversations with

the defendant, either in his affidavit or elsewhere, those representations amount to hearsay so far

as the plaintiffs are concerned.  Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one

made by the declarant while testifying at the trial or hearing, offered in evidence to prove the

truth of the matter asserted.").  Thus, should the Ambassador continue his unwillingness to

participate in this matter in the future, his representations cannot be relied upon by the plaintiffs

as evidence in support of their claims or to challenge the defendant's counterclaims.

16

Accordingly, the Court must grant the Ambassador's motion to quash the defendant's notice of deposition.  However, the Court will not award the attorney's fees the Ambassador seeks, Ambassador's Mot. to Quash at 1, because the defendant's position, although unsuccessful, was "substantially justified" given that the Ambassador submitted an affidavit, which could be reasonably interpreted by the defendant as indicating the Ambassador's willingness to participate in this litigation.  See Fed. R. Civ. P. 37(a)(5).  Similarly, the Court must deny the defendant's motion to dismiss the plaintiffs' complaint even if the Ambassador chooses to invoke his diplomatic immunity.  The defendant's position that the Ambassador's refusal to testify requires dismissal of this action, Def.'s Mot. to Dismiss at 12, overstates the significance of his testimony, as the plaintiffs represent that there are other officials employed by the Embassy who have personal knowledge of the underlying facts of their complaint and who can testify about the events that support their position, Libyan Government's Opposition to Defendant Miski's Opposition [#54/57] to the Libyan Government's Objection to the Magistrate Judge's Order Regarding Sanctions [#53] and Defendant Miski's Motion to Dismiss Plaintiff's Case [#54/57] at 12.  And given the restrictions that the Court has imposed on the plaintiffs' use of the Ambassador's affidavit, the defendant will not be prejudiced if the plaintiffs choose not to call the Ambassador as a witness at trial.[7]

As to the plaintiffs' motion to set aside the sanctions imposed by the Magistrate Judge, the Ambassador's legitimate claim of immunity is not a sufficient reason to set aside those

---

[7]     Moreover, the defendant cannot definitively establish what the Ambassador's testimony would be if he testified at trial.  The defendant presumes that the Ambassador would testify consistent with his sworn affidavit as to the alleged interactions he had with the defendant, see Defendant's Response to Ambassador Aujali's Motion to Quash Defendant's Notice of Deposition and Defendant's Motion to Dismiss Plaintiffs' Case at 6, 8, which is a reasonable conclusion.  However, without any further indication that such testimony would actually become part of the evidence at trial if the Ambassador testified, the defendant cannot establish the prejudice he presumes will occur based upon mere presumption and speculation.

sanctions, as urged by the plaintiffs.  Pls.' Mot. re Sanctions at 5.  The plaintiffs essentially argue

that the sanctions imposed against the Libyan government by the Magistrate Judge as a result of

"Ambassador Aujali's refusal to attend the August 7, 2009 settlement conference [are] both

'clearly erroneous' and 'contrary to law' since Ambassador Aujali has absolute immunity from

compulsory court appearances of any kind, much less a settlement conference pursuant to the

Vienna Convention."  Id.  The plaintiffs request that the Court vacate the Magistrate Judge's

order.  Id.  The defendant responds that the imposition of sanctions was reasonable under the

circumstances due to the abrupt cancellation of negotiations by the plaintiffs, and his counsel's

participation in several earlier conferences even though the plaintiffs obviously had no intentions

of settling the case, which caused "the [d]efendant [to] incur[] substantial avoidable expenses."

Def.'s Mot. to Dismiss at 6-7.

  The plaintiffs correctly acknowledge that the decision of the Magistrate Judge is entitled

to deference unless it is "'found to be clearly erroneous or contrary to law.'"  Boca Investerings

P'ship v. United States, 31 F.Supp.2d 9, 11 (D.D.C. 1998) (quoting Fed. R. Civ. P. 72(a)).

Having reviewed that decision, however, the Court cannot determine the exact reasoning

underlying the Magistrate Judge's imposition of sanctions against the plaintiffs.  After the Court

made its referral to the Magistrate Judge and she had already conducted a number of

unsuccessful settlement conferences with the parties, she instructed the plaintiffs to appear at the

next settlement conference with a representative who had the authority to approve a binding

settlement agreement.  Instead of complying, the plaintiffs did not appear, nor did they provide

any meaningful notice to the Court or the defendant that they intended to take this action.  The

Magistrate Judge therefore imposed a monetary sanction of $750 against the plaintiffs "for the

reasons set forth on the record." August 7, 2009 Minute Entry. However, the Minute Entry entered on the Magistrate Judge's docket does not indicate why the amount of $750 was selected. Therefore, the Court is unable to assess whether the Magistrate Judge's rationale was clearly erroneous or contrary to law under the circumstances, or whether the $750 sanction was reasonable.[8] Accordingly, the Court must deny without prejudice the plaintiff's motion to set aside the sanction and remand the issue to the Magistrate Judge so that she can supplement the record with her basis for the amount of the sanction. After the Magistrate Judge has provided the supplemental explanation, the plaintiffs may renew their motion if they still object to the Magistrate Judge's decision.

## II.        The Plaintiffs' Motions to Strike

Also before the Court are two motions filed by the plaintiffs seeking to strike the defendant's interrogatories and expert designations as untimely. See generally Plaintiff Libyan Government's Motion to Strike Defendant Miski's Expert Designations as Untimely; Plaintiff Libyan Government's Motion to Strike Defendant Miski's Second Set of Interrogatories as Untimely. The defendant opposes both motions. See generally Defendant's Opposition to Plaintiffs' Motion to Strike Defendant's Second Set of Interrogatories; Defendant's Opposition

---

[8]        Presumably $750 would be a reasonable sanction if the Magistrate Judge intended to compensate the defendant for the expense he incurred to participate in all of the settlement conferences, because in addition to the telephone conference, the Magistrate Judge had the five face-to-face settlement conferences at which the defendant's counsel participated. Awarding the defendant's counsel $150 per face-to-face conference would seem reasonable considering that the market hourly rate in Washington D.C. for attorneys with at least ten years of experience, as the defendant's counsel has, presumably exceeds that amount. See Laffey Matrix, http://www.laffeymatrix.com/see.html (last accessed Jan. 25, 2010); DC Bar, Find a Member http://www.dcbar.org/find_a_member/index.cfm (search Kamal Nawash) (last accessed Jan. 25, 2010) (indicating that counsel for the defendant was admitted to the District of Columbia bar on June 5, 1998); see also Cobell v. Norton, 231 F. Supp. 2d 295, 302 (D.D.C. 2002) (relying upon the Laffey Matrix, a methodology for calculating the prevailing market rate for attorney's fees in the Washington D.C. community, to determine the reasonableness of attorney's fees); Cf. In re North, 50 F.3d 42, 44 (D.C. Cir. 1995) (finding attorney's fees of $180 and $250 per hour reasonable for attorneys in the Washington D.C. area). On remand, the Magistrate Judge can specify the basis for the amount of the sanction.

to Plaintiffs' Motion to Strike Defendant Exert [sic] Witness Designation.  The relief that the plaintiffs seek must be denied, as a cursory review of the Federal Rules of Civil Procedure informs that non-pleadings, such as discovery requests, are not subject to motions to strike.  <u>See</u> Fed. R. Civ. P. 12(f) (identifying what may be stricken from pleadings); <u>see also</u> Fed. R. Civ. P. 7(a) (defining pleadings); <u>cf.</u> <u>Brown v. Broad. Bd. of Governors</u>, __ F.Supp.2d __, __ 2009 WL 2704586 at *3 n.5 (D.D.C. 2009) (finding that an opposition to a motion is not a pleading and observing that "striking pleadings is an extreme and disfavored remedy").  However, the Court issued a Scheduling Order in this case on February 3, 2009, which set forth the deadlines for the submission of expert witness reports and indicated that discovery would conclude on July 30, 2009.  And because the Court finds that the defendant has thus far failed to offer a compelling reason why he could not abide by the dates set forth in that Order, he must demonstrate why the plaintiffs should be required to respond to his untimely discovery requests.  Upon review of the defendant's opposition to the plaintiffs' motion, it is clear that he foresaw the discovery disputes that have arisen between the parties, including the sluggish pace the discovery process was taking, but instead of choosing to file a motion to compel (as the Court had advised in an earlier hearing) due to the potential delay he predicted in the resolution of any motion to compel, the defendant instead chose to submit to the plaintiffs untimely interrogatories hoping they would respond to them.  <u>See</u> Defendant's Opposition to Plaintiffs' Motion to Strike Defendant's Second Set of Interrogatories at 4.

To permit a party who is frustrated with the speed of the litigation process to disregard judicial orders and render deadlines nullities would severely impede the Court's ability to control its calendar.  Not only is the defendant's rationale for the submission of his untimely

interrogatories unconvincing, but he has offered no valid reason why he was unable to timely file his expert witness designations.  According to the defendant, he failed to file his expert witness designations because he believed that settlement was imminent.  Defendant's Opposition to Plaintiffs' Motion to Strike Defendant Exert [sic] Witness Designation at 3.  Presumably, he surmised that filing the expert designations would ultimately be unnecessary, and therefore, he decided not to file them until it became clear that the litigation would continue.  Yet, a mea culpa does not excuse the defendant from complying with Court-imposed discovery obligations. Absent a proffer that the parties had reached a settlement in principle, the defendant's reliance on the potential of settlement is both naïve and legally unreasonable, and did not relieve him of his Court-imposed obligations, such as complying with the scheduling order.  See New Econ. Capital, LLC v. New Mkts. Capital Group, 881 A.2d 1087, 1097 (D.C. 2005) (finding that no legally enforceable promise, and thus no reasonable reliance, can lie where the parties merely "promised [to enter into] an agreement if the material terms could be worked out between the parties" (citation omitted)).  The defendant should have either sought an extension of the discovery deadlines or filed a motion to compel, as he was advised by the Court when his objection to the plaintiffs' compliance with discovery was first brought to the Court's attention. Having failed to timely file his interrogatories and expert designations, the plaintiff need not respond to the these submission unless the defendant can show that undue prejudice would result were he not permitted to compel the plaintiffs to respond to his interrogatories and file his expert designations, as compared to the prejudice the plaintiffs have sustained as a result of the defendant's untimely actions.

**III.** **The Defendant's Duplicative Motions to Dismiss**

Finally, the remaining unresolved motion before the Court is an additional motion to dismiss filed by the defendant on March 28, 2009.  This motion must be denied as moot because the defendant's second motion to dismiss, filed on August 24, 2009, which the above analysis resolves, completely moots this earlier filed motion.  Compare Defendant's Response to Ambassador Aujali's Motion to Quash Defendant's Notice of Deposition and Defendant's Motion to Dismiss Plaintiffs' Case at 4, 8 (filed on March 28, 2009), with Defendant's Opposition to Plaintiffs' Objection to Magistrate Judge's Order Regarding "Sanctions" and Defendant's Motion to Dismiss Plaintiffs' Case at 7-8, 11-12 (filed on August 24, 2009).

**IV.** **Conclusion**

For the foregoing reasons, the Court finds that: (1) Plaintiff Libyan Government's Motion to Strike Defendant Miski's Amended Answer, Counterclaim and Jury Demand (Docket #36), or in the Alternative, Motion to Dismiss, and Motion for Default Judgment is granted in part in so far as it seeks to strike the defendant's untimely filed amended answer, counterclaim, and jury demand, and is denied in part in so far as it seeks further relief; (2) Ambassador Aujali's Motion to Quash Defendant Miski's Notice of Deposition is granted; (3) Plaintiff Libyan Government's Objection to Magistrate Judge's Order Regarding Sanctions is denied without prejudice and the matter remanded to the Magistrate Judge for clarification; (4) Defendant's Opposition to Plaintiffs' Objection to Magistrate Judge's Order Regarding "Sanctions" and Defendant's Motion to Dismiss Plaintiffs' Case is denied; (5) Plaintiff Libyan Government's Motion to Strike Defendant Miski's Expert Designations as Untimely is denied; (6) Plaintiff Libyan Government's Motion to Strike Defendant Miski's Second Set of Interrogatories as Untimely is denied; (7)

Defendant's Response to Ambassador Aujali's Motion to Quash Defendant's Notice of Deposition and Defendant's Motion to Dismiss Plaintiffs' Case is denied as moot; and (8) the defendant must show cause by February 12, 2010, why the plaintiffs should be required to respond to his untimely interrogatories and accept his untimely expert witness designation.[9]

\_\_\_\_\_/s/_____
Reggie B. Walton
United States District Judge

---

[9]     An Order consistent with the Court's ruling accompanies this Memorandum Opinion.